**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHERYL LYNNE ROBERSON,<br><br>  Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration,<br><br>  Defendant. | NO. EDCV 09-1419 SS<br><br>**MEMORANDUM DECISION AND ORDER** |

**I.**

**INTRODUCTION**

Cheryl Lynne Roberson ("Plaintiff") seeks review of the decision of Michael J. Astrue, Commissioner of the Social Security Administration (the "Commissioner" or the "Agency") denying her application for Social Security Disability Insurance ("SSDI") benefits. For the reasons stated below, the decision of the Agency is AFFIRMED.

\\

\\

## II.

## PROCEDURAL HISTORY

Plaintiff filed an application for benefits on October 4, 2005, alleging disability beginning on July 1, 2004. (Administrative Record ("AR") 13). Plaintiff alleged disability due to physical impairments stemming from scleroderma, diabetes and neuropathy. (AR 104-05). The Agency denied Plaintiff's claim initially and on reconsideration. (AR 50, 59). On February 16, 2007, Plaintiff sought a hearing before an Administrative Law Judge. (AR 65).

On May 6, 2008, Administrative Law Judge Jay E. Levine ("the ALJ") conducted a hearing. (AR 10-22). On November 19, 2008, the ALJ issued a decision denying benefits. (AR 10-22). Plaintiff sought review of the ALJ's decision before the Appeals Council. (AR 8). The Appeals Council declined review on June 5, 2009, (AR 5), and Plaintiff filed the present action on July 24, 2009.

## III.

## FACTUAL HISTORY

Plaintiff was born on November 11, 1963. (AR 96). She completed high school and earned an associate's degree. (AR 358). Before alleging disability, Plaintiff worked as a cashier, billing clerk, and bank teller. (AR 105). She last worked on July 1, 2004. (Id.). She alleged that she had to quit her last job due to severe pain all over her body. (Id.).

2

1    Dr. Steven Gerson examined Plaintiff on October 4, 2004 during an
2 internal medicine consultative evaluation. (AR 147). He determined
3 that Plaintiff suffers from tenderness and stiffness throughout her
4 body. (AR 150-51). However, he also stated that Plaintiff "should be
5 able to lift 10 lbs frequently, 20 lbs occasionally. She could stand
6 and walk for 2 hours in an 8-hour workday and sit for 6 hours in an 8-
7 hour workday." (AR 151).

9    An October 25, 2004 residual functional capacity assessment
10 produced similar results.[1] The assessment notes that Plaintiff can lift
11 items of up to ten pounds occasionally, stand or walk for at least two
12 hours in an eight hour workday, and sit about six hours in an eight hour
13 workday. (AR 155). In the "Symptoms" section of the assessment, the
14 report indicates that Plaintiff's alleged pain symptoms are attributable
15 to a medically determinable impairment. (AR 159). However, the report
16 also reads that "the severity or duration of the symptom(s) . . . is
17 disproportionate to the expected severity or expected duration" of
18 Plaintiff's impairments. (AR 159).

20    Plaintiff's husband filled out a third-party function report
21 describing Plaintiff's condition on October 28, 2005. (AR 129-36). He
22 reported that Plaintiff can do some household chores with assistance,
23 (AR 131), but that she needed to use a wheelchair or walker "every day."

---

[1] It is not clear who conducted the assessment. The Administrative Record table of contents only notes it was "completed by DDS physician." (AR 3).

1  (AR 135). He also stated that Plaintiff can only walk "about 20 steps"
2  before needing to rest. (AR 134).

4  Dr. Jamshid Tamiry also examined Plaintiff during a December 6,
5  2005 internal medicine consultation. (AR 174). He diagnosed Plaintiff
6  with diabetes, obesity, schleroderma, and diabetic retinopathy. (AR
7  179-80). Dr. Tamiry determined that Plaintiff "can lift and carry 10
8  pounds occasionally." (AR 180). He also determined that Plaintiff can
9  stand or walk for up to two hours and sit for up to six hours per day.
10 (Id.).

12  A December 14, 2005 residual functional capacity assessment noted
13 that Plaintiff can lift items of up to ten pounds occasionally, stand
14 or walk for at least two hours in an eight hour workday, and sit about
15 six hours in an eight hour workday.[2] (AR 183).

17  At the May 6, 2008 administrative hearing, Plaintiff stated that
18 she suffered from pain and stiffness throughout her body. (AR 361-63).
19 Plaintiff described her daily routine of feeding her pet animals and
20 performing household chores by "put[ting] the dishes in the dishwasher
21 or throw[ing] a load in the laundry." (AR 376). However, Plaintiff
22 commented that the pain she experiences affects her ability to perform
23 daily chores. For example, Plaintiff testified that she has not "been
24 able to do gardening for years. The shopping consists of the grocery

---

[2] Similar to the 2004 assessment, the Administrative Record table of contents only notes this assessment was "completed by DDS physician." (AR 4).

4

store and that's usually to run in . . . and just get what I need." (AR 377). She also stated that she spends "maybe 20 minutes" doing household chores per day. (Id.).

Finally, in a July 30, 2008 internal medical evaluation, Dr. Nicholas Lin noted the "examination reveals no significant findings . . . except mild limitation of the back and shoulders." (AR 342). In the examination, Plaintiff "mention[ed] that she can walk up to two blocks on a flat terrain at a normal pace." (Id.). Further, Plaintiff stated "she is able to perform household chores with her husband, including preparing the meals, washing dishes, going to the grocery market, and doing the laundry." (Id.). She rated her "pain intensity as averaging 7 out of 10 on the Numeric Pain Scale." (Id.). Dr. Lin determined that Plaintiff "can stand or walk up to 6 hours in an 8 hour workday with appropriate breaks . . . bending, stooping, kneeling, and crouching can be done frequently. (Id.).

**IV.**

**DISCUSSION**

Plaintiff contends that the ALJ improperly rejected Plaintiff's subjective pain testimony. (Jt. Stip. at 3). Plaintiff further contends that the ALJ did not properly consider her husband's lay witness testimony. The Court disagrees with both contentions.

\\

\\

5

**A.   The ALJ Provided Clear And Convincing Reasons For Rejecting Plaintiff's Subjective Pain Testimony**

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must first evaluate whether a claimant presents medical evidence of an underlying impairment which could reasonably be expected to produce pain or the symptoms alleged. See Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).  The claimant need only show that her impairments could reasonably have caused some degree of the symptom.  See id.  If the claimant meets this test, the ALJ may only reject the claimant's testimony about the severity of her symptoms by offering specific, clear, and convincing reasons for doing so.  See id.

The ALJ may consider the following factors when weighing the claimant's credibility: (1) her reputation for truthfulness; (2) inconsistencies either in her testimony or between her testimony and conduct; (3) her daily activities; (4) her work record; and (5) testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which she complains.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  An ALJ may also consider a lack of objective medical evidence when evaluating a claimant's subjective complaints.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

Here, Plaintiff testified that she sometimes experiences "very extreme" pain. (AR 365).  She described feeling pain in her lower back,

6

hips, legs, hands, and shoulders. (AR 361). She stated that she "never knows when" the pain will affect her; the pain will also force her to "end up in bed all day." (AR 365). Plaintiff described feeling "tightening" in skin, which causes "limited mobility." (AR 363). She also stated her pain and stiffness restricted her ability to perform household chores. (AR 365). For example, Plaintiff claimed she hasn't "been able to do gardening for years. [S]hopping consists of the grocery store and that's usually to run in . . . and just get what I need." (AR 377). Plaintiff further stated that she only spends "maybe 20 minutes" doing household chores per day. (AR 377).

The ALJ determined that Plaintiff's medically determinable impairment could reasonably produce the symptoms alleged, but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms" were not entirely credible. (AR 18). The ALJ explained that Plaintiff's "allegations of disability" were only "partially credible with respect to the degree of severity alleged versus the objective findings." (AR 17). The ALJ provided several clear and convincing reasons supported by substantial evidence in the record to support this determination.

First, the ALJ noted that "[Plaintiff's] statements are not consistent." (AR 17). The ALJ stated that, despite allegations of debilitating weakness and pain, "[Plaintiff's] statements in the record . . . indicate that [P]laintiff is able to perform self care activities, as well as a variety of daily activities." (Id.). The ALJ also stated that Plaintiff testified that she is able to perform, read, and walk about a block. (AR 17). The ALJ pointed to other instances in the

record where Plaintiff provided inconsistent statements.  For example, the ALJ noted Plaintiff's inconsistent statements about using an assistive device to ambulate.  (AR 17-18).  In a 2005 function report, Plaintiff stated that she needed a wheelchair to ambulate.  (AR 116).  However, Plaintiff denied using an assistive device during Dr. Lin's July 2008 medical evaluation.  (AR 342).  Moreover, Plaintiff testified at the hearing that she has been able to do more walking since her weight loss and did not state that she needed any assistive device.  (AR 378).

Second, the ALJ noted that the objective medical evidence does not support Plaintiff's alleged degree of disability.  (AR 18-20).  Plaintiff cannot identify any objective evidence that supports her claims of total disability.  Instead, all three internal medicine consultative examiners and both state agency reviewing physicians agreed that Plaintiff could work with some restrictions.  (AR 151, 155, 180, 183, 342).  No treating or examining physician suggested greater restrictions for Plaintiff than those set forth in the ALJ's RFC.  (AR 20).  A lack of objective evidence supporting Plaintiff's symptoms cannot be the sole reason for rejecting Plaintiff's testimony.  Rollins, 261 F.3d at 856-57.  However, it can be one of several factors used in evaluating the credibility of Plaintiff's subjective complaints.  Id.

Third, the ALJ noted that Plaintiff received routine and conservative treatment.  (AR 17); see also Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (holding that "conservative treatment" is sufficient to discount a claimant's testimony regarding the severity of an impairment).  This finding is supported by substantial evidence in

the record. Although Plaintiff was prescribed Vicodin and other medications, (AR 281, 283), it does not appear that she received any more extreme treatment or great increases in her medication over time. Instead, the medical records show that her doctors used conservative care to manage her pain, and recommended that she "engage in efforts at weight reduction with consideration of pool exercise." (AR 283); (see also AR 247) ("Needs Wt Reduction - Suggest Pt to Think about intestinal bypass surg." (06/14/06)). On August 24, 2006, Plaintiff was referred for gastric bypass orientation, which apparently was successful. (AR 239). There are no indications that she received more severe treatment for her pain.

Fourth, the ALJ noted that Plaintiff has regularly used specific medications for a long period of time. (AR 17). In a questionnaire, Plaintiff listed her medications as "tylenol, tylenol with cod., Advil and Vicodin." (AR 204). Plaintiff's medication use suggested to the ALJ that the pain medications have been effective in alleviating Plaintiff's pain.[3] (See AR 17). The consistent use of specific medications also suggested to the ALJ that Plaintiff does not suffer from debilitating side effects from the medications. (Id.).

In sum, the ALJ provided several clear and convincing reasons for rejecting Plaintiff's testimony. Accordingly, remand is not required.

---

[3] Plaintiff has also been inconsistent with stating how much pain she experiences. When asked by the ALJ to gauge her pain level on a one to ten scale, Plaintiff stated that she experiences a four while she is on medication and an eight when she is not on medication. (AR 371). However, Dr. Lin noted that Plaintiff said she experiences a seven on a one to ten pain scale. (AR 342).

**B.    The ALJ Properly Considered Plaintiff's Husband's Testimony**

Plaintiff also contends that the ALJ failed to properly consider statements from Plaintiff's husband. (Jt. Stip. at 3). The Court disagrees.

An ALJ must consider and give weight to the testimony of family and friends regarding a claimant's symptoms. See Smolen v. Chater, 80 F. 3d 1273, 1288 (9th Cir. 1996). If an ALJ rejects lay witness testimony, the ALJ must provide reasons germane to each witness whose testimony he rejects. See id. (citing Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993)). However, an ALJ does not have to discuss lay witness testimony when the testimony is in conflict with the available medical evidence. See Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984).

Here, Plaintiff's husband submitted a third-party function report in 2005. (AR 129). In terms of daily activities, Plaintiff's husband reported that Plaintiff "helps with pets['] food occasionally" but that his daughters and he "mostly take care of needs for . . . [the] animals." (AR 130). In terms of personal care, Plaintiff's husband wrote that it is "very difficult [for Plaintiff] to dress[] [and] very hard [for her] to raise [her] arms or reach [her] feet," (AR 130), but that she did not need any special reminders to take care of her personal needs and grooming, nor reminders or help taking medicine. (AR 131). In terms of meals, he stated that Plaintiff prepares meals "daily for herself, occasionally for others" and is limited to preparing frozen meals in the microwave or "sometimes with assistance if she sits in kitchen can stir food." (AR 131). In terms of house work, he stated

that Plaintiff, "if assisted with carrying laundry to machines[,] can load if sitting down" and does laundry "usually maybe 1 load a day." (AR 131). He stated further that Plaintiff is limited because "she has a lot of pain, little mobility and get[s] short of breath very easily." (AR 132). In terms of getting around, he indicated that when Plaintiff goes out, she drives a car but cannot go out alone. (AR 132). In terms of shopping and money, he indicated that Plaintiff shops in stores and by computer for "personal needs such as clothes . . . once or twice a month, about an hour," and can pay bills, count change, handle a savings account, and use a checkbook/money orders. (AR 132). In terms of abilities, he stated that Plaintiff needs a walker, wheel chair, hearing aid, and glasses/contact lenses "every day." (AR 135).

Contrary to Plaintiff's arguments, the ALJ actually credited some of Plaintiff's husband's report, but found that it contradicted Plaintiff's disability claim. (AR 17-18). Indeed, the ALJ pointed out that the "third party statements by [Plaintiff's] husband indicate [Plaintiff] was able to perform self-care activities, as well as a variety of daily activities, interact with others, and engage in purposeful activity when she is motivated to do so." (AR 17) (citation omitted); (see also AR 133). The ALJ further noted that "[i]n a third party questionnaire, [Plaintiff's] husband states [Plaintiff] is able to perform some household chores, do laundry, and help prepare meals." (AR 18) (citation omitted); (see also AR 129, 131).

To the extent the ALJ rejected some of Plaintiff's husband's report, the ALJ was not required to state specific reasons because the report was in conflict with the available medical evidence. See

11

1  Vincent, 739 F.2d at 1395 ("The ALJ properly discounted lay testimony
2  that conflicted with the available medical evidence.").  For example,
3  Plaintiff's husband's description of Plaintiff relying on a wheelchair
4  or walker "[e]very day" was contradicted by Dr. Lin's August 8, 2008
5  internal medical evaluation.  (AR 135).  Dr. Lin opined in the August
6  8, 2008 internal medical evaluation that Plaintiff's "[gait] is within
7  normal limits . . . she is able to change positions and get on and off
8  the examining table without assistance. No assistive device is required
9  for ambulation across the room."  (AR 341).  Dr. Lin also noted that
10 Plaintiff "denie[d] using an assistive device."  (AR 342).  Indeed,
11 Plaintiff testified at the hearing that she has been able to do more
12 walking since her weight loss and did not state that she needed any
13 assistive device.  (AR 378).

15    Moreover, even if the ALJ erred by not providing reasons germane
16 to Plaintiff's husband, any error was harmless because the ALJ's
17 decision remains legally valid, despite the error.  See Carmickle v.
18 Comm'r., Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) ("[T]he
19 relevant inquiry . . . is whether the ALJ's decision remains legally
20 valid, despite such error.").  If the ALJ's ultimate credibility
21 determination and reasoning are adequately supported by substantial
22 evidence in the record, no remand is required.  Id. (citing Batson v.
23 Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195-97 (9th Cir. 2004)).

25    Here, any error in the ALJ's rejection of Plaintiff's husband's
26 report was harmless because the report was contradicted by the available
27 medical evidence.  Indeed, all three internal medicine consultative
28 examiners and both state agency reviewing physicians agreed that

Plaintiff could work with some restrictions. (AR 151, 155, 180, 183, 342). No treating or examining physician suggested greater restrictions for Plaintiff than those set forth in the ALJ's RFC determination. (AR 16). For example, Dr. Lin's examination revealed that Plaintiff can walk up to two blocks at a normal pace, perform household chores, including preparing meals, washing dishes, grocery shopping, and laundry. (AR 342). Moreover, Plaintiff denied severe pain or tenderness during tests of both hands and wrists. (Id.). Similarly, in a Kaiser Permanente chronic pain management program report dated September 26, 2006, Plaintiff stated "that her night sleep is much better and uninterrupted by pain." (AR 223). Finally, Dr. Chang advised that Plaintiff was "currently on reasonable management for pain symptoms, including the use of Vicodin, Nabumetone, and Cyclobenzaprine." (AR 283).

In sum, the ALJ properly considered Plaintiff's husband's testimony. The ALJ actually credited some of Plaintiff's husband's third-party function report, but found that it contradicted Plaintiff's disability claim. To the extent the ALJ rejected the report, the ALJ was not required to state specific reasons because the report was in conflict with the available medical evidence. Even if the ALJ erred by not stating specific reasons for rejecting Plaintiff's husband's report, any error was harmless because the ALJ's ultimate credibility determination remains legally valid, despite the error. Accordingly, remand is not required.

\\
\\

**V.**

**CONCLUSION**

Consistent with the foregoing, IT IS ORDERED that the decision of the Commissioner is AFFIRMED.  IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on counsel for both parties.

DATED: June 22, 2010.         _____/S/_____
                              SUZANNE H. SEGAL
                              UNITED STATES MAGISTRATE JUDGE